UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

In re:

|  |  |
|---|---|
| Robin Hayes | Chapter 13 |
|  | Case No.  07-13967-JNF |
| Debtor |  |

DEBTOR'S POST-TRIAL MEMORANDUM REGARDING HER OBJECTION TO
PROOF OF CLAIM OF AMC/DEUTSCHE BANK AND
ITS MOTION FOR RELIEF FROM STAY

NOW COMES Robin Hayes, debtor and submits the following for her post-trial memorandum.

ARGUMENT

There are two matters before the Court:  1) the debtor's objection to the proof of claim filed by "AMC Mortgage Services, Inc. as loan servicer for Argent Mortgage Company, LLC" (number seven on the Claims Register); and 2) the motion for relief from stay filed by Deutsche Bank National Trust Company, as Trustee of a securitized real estate trust.  The initial issue that the Court must resolve is whether either entity has standing in this bankruptcy case.

1.    Standing

The Bankruptcy Appellate Panel of the First Circuit considered the issue of standing in In re Newcare Health Corp., 244 BR 167 (1st Cir. BAP 2000).  The Panel observed that:

> Standing is a threshold question in every federal case, determining the power of the court to entertain the suit.  Hence, a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent.

> The inquiry into standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.  In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III.  Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits on the class of persons who may invoke the courts' decisional remedial powers.   These prudential limitations are self-imposed rules of judicial restraint:

> These considerations, which militate against standing, principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law

invoked, or (3) advances abstract questions of wide public significance essentially generalized grievances more appropriately addressed to the representative branches. The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the court.

(citations and quotation marks omitted).

Although a Proof of Claim is entitled to *prima facie* evidentiary effect, FRBP 2001(f), when a claim is challenged, it is incumbent upon the claimant to come forward with evidence in support of the claim, In re Healthco International, Inc., 257 BR 379 (Bkrtcy.D.Mass. 2001), including evidence that it is the owner of the debt at issue, In re Melillo, BAP No. MB07-060, slip opinion, July 8, 2008 (affirming order disallowing claim for credit card debt because claimant could not produce proof of ownership of the debt)[1]; In re Long, 353 BR 1, 17 (Bkrtcy. D.Mass. 2006) (disallowing claim and voiding security interest because claimant could not show complete chain of title). Because Deutsche Bank has failed to show a complete, proper chain of title to the mortgage, the claim must be disallowed, the security interest voided and the motion for relief from stay denied with prejudice.

Initially, Hayes requests that the Court take judicial notice of its records, not merely the evidence introduced at trial. A court may always take judicial notice of its own records. In re Hyde, 334 BR 506 (Bkrtcy.D.Mass. 2005), *citing* Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). It is important that the Court do so in order for the confusing and contradictory statements of AMC, Deutsche Bank and CitiResidential to be properly considered.

Deutsche Bank filed its motion for relief from stay on or about September 17, 2007. In the motion, Deutsche Bank alleged at paragraph 3 that it "holds the mortgage via assignment." The motion did not state when the purported assignment was executed, nor did it indicate that the assignment had been recorded. A copy of the assignment was not attached to the motion. The allegation that Deutsche Bank is the holder was repeated at paragraph 5f of the motion. In her response to the motion, Hayes questioned Deutsche Bank's standing.

About two weeks prior to the motion being filed, Hayes objected to the claim filed by AMC Mortgage Services, questioning whether the claim, in fact, was secured since no copy of the note and mortgage was attached to the claim. AMC filed a response to the claim objection on November 6, 2007, and attached a copy of the note, mortgage and a loan history. AMC claimed to be "the servicer for the holder of a mortgage on the Debtor's property", but did not identify the holder in its response, nor did it refer to Deutsche Bank, notwithstanding the fact that Deutsche Bank represented in its motion that it was the holder. Notably, AMC's response to the claim objection did not include a copy of an assignment or any other proof that it is authorized to act as servicer for whomever the owner of the mortgage is.

After Hayes filed an Amended Plan, Deutsche Bank filed an objection to the plan on

---

[1] Although marked "For Publication", it has not appeared on Westlaw as of the date and time of this memorandum.

April 25, 2008, stating that Deutsche Bank is the holder and that Citi Residential Lending, Inc., is the current servicer.  A few days later, a "Transfer of Claim other than for Security" was filed, in which it was alleged that the claim had been transferred from AMC to "Citi Residential Lending, Inc., as a loan servicer for the secured creditor Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities Inc."   No further identification of the secured creditor was provided in the Transfer form.

In the days prior to the trial, cross-motions to compel production of documents intended to be used at trial were filed and allowed.  In response to Hayes' motion, counsel for Deutsche Bank filed 96 pages of documents that she intended to seek to admit into evidence.  Since the documents were filed, the Court may take judicial notice of them, even if not admitted at trial.

The Note

At trial, Deutsche Bank presented one witness and introduced twenty-one exhibits[2], including copies of the Note and Mortgage.  Because the mortgage bears indicia indicating that it was recorded at the Registry of Deeds, it may be considered authentic within the meaning of Fed.R.Evid. 901.  However, the copy of the Note is not entitled to the same consideration since it is not recorded and the copy is not certified, nor is it a public record.  This is critical to Deutsche Bank's claim for at least two reasons:  1) in Hayes' motion to compel production of documents, she requested that Deutsche Bank be required to present at trial the original Note.  Deutsche Bank did not do so, and thus failed to comply with the Court's order.  2)  of greater concern is that the copy presented does not have any indication that Deutsche Bank is the holder of the note. Because a note is a negotiable instrument within the meaning of Section 3-104 of the Uniform Commercial Code, it cannot be assigned in the same way that a mortgage is assigned.  Rather, it must be "negotiated", see UCC §3-202.  Absent an endorsement by the transferor, the transferee obtains only limited rights, if any, see UCC §3-203.

Since Deutsche Bank did not produce the original note at trial and the copy of the note that was produced bears no endorsement of any sort, Deutsche Bank has failed to prove that it is the holder of the note.  Having failed to show that it is the owner of the debt, it lacks standing to enforce the debt.  In re Melillo, BAP No. MB07-060, slip opinion, July 8, 2008 (affirming order disallowing claim for credit card debt because claimant could not produce proof of ownership of the debt)[3].

The Assignments

Exhibit 3 was a "Confirmatory Corporation Assignment of Deed of Trust/Mortgage". This document was executed on April 16, 2008, by Tamara Price, claiming to be a Vice

---

[2] Hayes' counsel's notes are a bit unclear on this point, but he believes this to be correct.

[3] Although marked "For Publication", it has not appeared on Westlaw as of the date and time of this memorandum.

President of Citi Residential Lending, Inc, and that Citi Residential Lending, Inc., was the "Attorney-in-Fact" for Argent Mortgage Company, LLC. The document bore indicia of having been recorded at the Plymouth Country Registry of Deeds on April 28, 2008. It also purported to assign and transfer the mortgage from Argent Mortgage Company, LLC, to Deutsche Bank, as trustee. Lastly, it claimed that "the effective date of this assignment is October 24, 2005". Handwritten on the assignment is the phrase: "For POA see Plymouth 35315 – 69". This is the same document found at page 23 of the 96 pages filed in advance of trial. The designation "confirmatory" was never explained.

At page 38 of the 96 pages, counsel for Deutsche submitted an apparently unrecorded assignment that allegedly was "executed and delivered on 11/03/2004" and assigned the mortgage from Argent Mortgage Company, LLC, to Ameriquest Mortgage Company.

At page 40 of the 96 pages, counsel for Deutsche submitted another apparently unrecorded assignment, purporting to assign the mortgage from AMC Mortgage Services, Inc. to Deutsche Bank. This assignment was also signed by Tamara Price, and was executed on February 4, 2008. Unlike exhibit 3 at trial, this assignment does not purport to backdate the effective date of the assignment.

The Pooling and Servicing Agreement

At trial, Deutsche Bank introduced a "Pooling and Servicing Agreement" (PSA), which it alleges, in essence, governs its authority to do business. In general, the document evidences an agreement between Argent Securities, Inc., Ameriquest Mortgage Company, and Deutsche Bank National Trust company. The sixth page of the Agreement has a Preliminary Statement indicating that Argent Securities, Inc., the "depositor", intends to sell pass-through certificates in several REMIC. A "REMIC" is a "real estate mortgage investment conduit", a legal entity with certain characteristics. *See* 26 USC §860D. Shorn of the legal verbiage, a REMIC is an investment vehicle in which transferable shares in a trust are sold to investors, the *res* of the trust consisting of mortgages and promissory notes. Overall, the import of these and related statutes is that a REMIC is a type of real estate investment trust ("REIT") subject to strict regulation. 26 USC §851; 26 USC §860G(e). Section 4.06 of the Pooling and Servicing Agreement requires the trustee to comply with reporting requirements of the Securities Exchange Act of 1934.

In order for a mortgage to become part of a REMIC pool, the mortgage must be in existence on or before the day the REMIC is formalized. 26 USC §860G(a)(3). The day the REMIC is formalized is known as the "startup day". 26 USC §860G(a)(9).

According to the PSA, the startup day is defined as the closing date, *see page 63*, which is specified as October 8, 2004, *see page 20*. Under Section 2.01 of the PSA, the Depositor conveyed, on the closing day (or within a short time thereafter), a number of documents, *see page 72*:

1.  the original Mortgage Note, endorsed in blank or as otherwise specified;
2.  the original Mortgage with evidence of recording, and related documents;
3.  an original Assignment assigned in blank, without recourse;
4.  the original recorded intervening Assignments showing a complete chain of title from the originator to the Person assigning the mortgage to the trustee;
5.  the original or copies of assumptions, modifications or related documents; and
6.  the original lender's title insurance policy or attorney's opinion of title and related documents.

Boiled down to its essence, the PSA is a purchase and sale agreement whereby a depositor, Argent Securities, Inc., agrees to form a REIT, of which Deutsche Bank will act as trustee. Argent then will sell the pool to Deutsche Bank as trustee, and Ameriquest Mortgage Company will act as master servicer to see to the collection of money due from mortgagors. *See section 2.01 of the PSA.*

As stated above, the mortgages included in the pool must be in existence as of the closing date. In some circumstances, a mortgage that is not a part of the original pool may be substituted for a mortgage that is later found to be not in conformity with the standards for inclusion. The replacement mortgages are known as a "qualified replacement mortgage loan". *See page 49 of the PSA;* 26 USC §860G(A)(4).

Analysis

As Section 2.01 of the PSA makes clear, the only entity that can convey mortgage loans to the trust is Argent Securities, Inc. Although Argent Mortgage Company, LLC, is identified as one of the "originators" of the mortgages included in the pool, *see page 41 of the PSA*, there is nothing in the PSA that gives Argent Mortgage Company, LLC, the right to convey mortgage loans directly to Deutsche Bank as trustee. In Section 2.01, the depositor, Agent Securities, Inc., is required to provide, on the closing day or within a short time thereafter the *original* mortgage loan documents, including assignments from the originator (in this case, Argent Mortgage Company) to the "Person" assigning the mortgage to Deutsche Bank, i.e., Argent Securities, Inc.

As noted above, the "closing day" for this trust – i.e., the date it was formally established – was October 4, 2004. The note and mortgage, in evidence as exhibits 1 and 2 at trial, clearly indicate that they were signed on November 3, 2004, almost a month after the REIT was established. Hayes' mortgage loan could not have been a part of the pool of mortgages in the trust on the "closing day".

Although a mortgage loan may become part of a pool after the closing day, the evidence introduced at trial by Deutsche Bank, and otherwise in the record of this case, warrants a finding that Hayes' loan never legally became a part of the pool. At trial, Deutsche Bank's exhibit 3 is a "confirmatory corporation assignment of deed of trust/mortgage". It was signed on April 16,

2008 – almost three and one-half years <u>after</u> the trust was formed and approximately ten months <u>after</u> Hayes filed the present chapter 13 case. Furthermore, the assignment was from Argent Mortgage Company, LLC, to Deutsche Bank as trustee. This is not a valid assignment because, as argued above, only Argent Securities, Inc., has any authority to convey mortgage loans to the trust.

Curiously, this assignment purports to be effective as of October 24, 2005. There was no explanation as to the reason for this backdating. It would not serve to make the mortgage loan a part of the pool because the closing day was October 4, 2004, slightly more than a year before the supposed effective date of the assignment. Furthermore, the validity of a back-dated assignment is highly questionable since an assignment must be "delivered" to the assignee. *See* <u>Property Asset Management Inc., v. Chicago Title Insurance Co, Inc.</u>, 173 F.3d 84 (2nd Cir. 1999); <u>Benmaor v. Goldberg</u>, 1999 WL 706627 (Mass. Sup.Ct. 1999); <u>Lamson & Co. v. Abrams</u>, 305 Mass. 238 (1940) (assignment becomes effective upon delivery at the earliest); <u>Sullivan v. Hudgins</u>, 303 Mass. 442 (1939 (assignment must be delivered to be effective). Furthermore, assignments must be in writing since, at least in Massachusetts, they convey an interest in land. <u>Kaufman v. Federal Nat. Bank</u>, 287 Mass. 97 (1934).

Leaving aside that issue, Deutsche Bank has also failed to demonstrate that the person signing the assignment, Tamara Price, had authority to convey Hayes' mortgage to the trust. Ms. Price signed as Vice President of Citi Residential Lending, Inc., as attorney-in-fact for Argent Mortgage Company, LLC. The assignment has the following handwritten on it: "For POA see Plymouth 35315 – 69." This would appear to be an indication that a Power of Attorney could be found recorded at book 35315, page 69 in the Plymouth Registry of Deeds that would show that Tamara Price is authorized to sign the assignment. At trial, Deutsch Bank did not introduce this Power of Attorney. Instead, it introduced exhibit 4, which is a "Limited Power of Attorney" bearing indicia that it was recorded on October 17, 2007 at book 21675, page 174, and exhibit 5, which is an "Incumbency Certificate", recorded on November 5, 2007, at book 21724, page 219. Deutsche Bank thus has failed to show that Tamara Price had any authority to execute the assignment. Even assuming that exhibit 4 was somehow related to Hayes' loan, there is nothing in the Power of Attorney that indicates that Citi Residential had authority to <u>convey</u> loans on behalf of Argent Mortgage Company in any circumstance other than those specifically enumerated, which do not include assigning them to a REIT. Paragraph 6 does refer to assignments, but only "in connection with the <u>repurchase</u> of the mortgage loan". "Repurchase" means "to buy back" or "reacquire", in the every-day sense of the word. In order to "repurchase" the loan, it must have been sold in the first place. Thus paragraph 6 would seem to apply to the circumstance in which Argent Mortgage Company is a <u>trustee</u> of a REIT and needs to assign the mortgage <u>out of</u> the pool, possibly because the mortgage loan has been found not to qualify for inclusion in the pool.

As noted above, there are two other assignments in the record of this case. The first is an assignment that allegedly was "executed and delivered on 11/03/2004", and assigned the mortgage from Argent Mortgage Company, LLC, to Ameriquest Mortgage Company. There is no proof that the mortgage was never assigned by Ameriquest to any other entity.

Another apparently unrecorded assignment purported to assign the mortgage from AMC Mortgage Services, Inc. to Deutsche Bank. This assignment was also signed by Tamara Price, and was executed on February 4, 2008. Unlike exhibit 3 at trial, this assignment does not purport to backdate the effective date of the assignment. This assignment manifestly is invalid since there is no dispute that AMC Mortgage Services, Inc., was never assigned the mortgage.

Based on all of the foregoing, therefore, Hayes requests that the court find and rule that Deutsche Bank does not have legal title to the mortgage and thus lacks standing to appear in this case or to file a proof of claim, and that its purported security interest is void pursuant to 11 USC §506(d). In re Long, 353 BR 1, 17 (Bkrtcy. D.Mass. 2006) (disallowing claim and voiding security interest because claimant could not show complete chain of title).

2.      Relief from the automatic stay

In order to obtain relief from the automatic stay, a moving party must show a "colorable" right to possession of the property. In re Maisel, 378 BR 19 (Bkrtcy.D.Mass. 2007), *citing, inter alia*, Grella v. Salem Five Cent. Sav. Bank, 42 F.3d 26 (1st Cir. 1994). The Maisel court quoted In re Parrish, 326 BR 708 (Bankr.N.D.Ohio 2005):

> "If the claimant is the original lender, the claimant can meet its burden by introducing evidence as to the original loan. If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant. A claimant who is the servicer must, in addition to establishing the rights of the holder, identify itself as an authorized agent for the holder."

In this case, Deutsche Bank has failed to produce "evidence that traces the loan from the original lender to the claimant." Accordingly it has failed to show a "colorable" right to possession of the property.

Furthermore, the motion is predicated on post-petition defaults on payments directly to Citi Residential, the purported servicer of the mortgage loan. However, Hayes' amended plan set forth a modification of the loan pursuant to §1322(b)(2), this being a multi-family property, as Deutsche Bank must admit since its own evidence, an appraisal admitted at trial as exhibit 9, clearly indicates "Property Type – Multifamily". It is well settled that a secured claim is modifiable if it is multifamily property, even if part of the property is the debtor's principal residence. Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996). Under case law in this

district, when a secured claim is modified, the claim must be paid through the trustee, not
directly.  In re Bernard, 201 BR 600 (Bkrtcy.D.Mass. 1996).  Thus Hayes is not required to
make any payments directly to Deutsche or its servicer.  The motion is moot and must be denied.

3.      The Proof of Claim

        At trial, Deutsche Bank introduced its Proof of Claim as exhibit 8.  Addendum "A" to the
Proof of Claim alleges a total of $75,676.57 in pre-petition arrears, comprised of $58,290.23 in
principal and interest, and $17,386.34 in late charges, property inspections, foreclosure fees and
costs and the like.

        As to the principal and interest payments, these consist of 22 payments at different
amounts:  16 payments of $2,514.28; 5 at $2,972.50; and 1 at $3,199.25.  The note (exhibit 1)
indicates that it is a variable interest rate note.  Deutsche Bank's witness testified that the one
payment at $3,199.25 constituted the principal and interest payment of $2,972.50 plus a fraction
of an annual cost for force-placed insurance.  However, Deutsche Bank failed to introduce any
evidence showing that the principal and interest increase reflected by the 5 payments at
$2,972.50 was correctly computed in accordance with the terms of the note, and its witness was
unable to testify as to the computations.  Having failed to do so, Deutsche Bank cannot collect
the increased amount, even assuming that it owns the note and mortgage.  At best, it can only
collect pre-petition arrears of 21 payments at the contract payment ($2,514.28), and one payment
at the contract payment plus a fraction of the insurance charge, that being $55,540.91.

        A secured creditor may collect fees and costs if the note and mortgage so provide and the
fees and costs are reasonable and necessary.  In re Plant, 288 BR 635 (Bkrtcy.D.Mass. 2003); In
re Stewart, --BR --, 2008 WL 2676961 (Bkrtcy.E.D.La 2008).  When challenged, the creditor
must provide evidence in support of the fees and costs.  Id.  In Massachusetts, the mechanism
where by this is done generally is a fee application pursuant to the Local Rules.  Plant.  Deutsche
Bank did not file a fee application.  In addition, the Court sustained Hayes' objection to the
admission of supporting documents, or in camera consideration of the same, because Deutsche
Bank failed to comply with the Court's order to produce the same to Hayes' counsel prior to the
trial.  There being no evidence before the Court from which the Court may assess the
reasonableness or necessity of the fees and costs, they must be disallowed.

        Overall, Deutsche Bank did not provide evidence that the Principal Balance of
$322,422.61 shown on the proof of claim is correct, or that the total debt of $398,099.18 is
correct, nor did it explain the difference.  Because Hayes' plan modifies the claim and therefore
must be paid in full during the term of the plan, this is critical not only to the Court's assessment
of any future plans, but to the allowance of the claim, also.

        Because Deutsche Bank has not shown that it owns the debt at issue, the claim must be

disallowed in full.  In re Melillo, BAP No. MB07-060, slip opinion, July 8, 2008 (affirming order disallowing claim for credit card debt because claimant could not produce proof of ownership of the debt)[4]; In re Long, 353 BR 1, 17 (Bkrtcy.D.Mass. 2006) (disallowing claim and voiding security interest because claimant could not show complete chain of title).  Similarly, Deutsche Bank has not shown that its calculation of the Principal Balance and Total Debt is accurate.  If the Court is inclined to allow the claim at all, the total debt as of the petition date should be computed as follows:

1.   The first payment was due on January 1, 2005.  (See Note, exhibit 1).
2.   The petition date was June 26, 2007.
3.   The difference between the two dates is approximately thirty months.
4.   The principal amount of the note is $324,000.  (See Note, exhibit 1).
5.   In the proof of claim, AMC alleges that Hayes is in arrears for 22 payments, meaning that she (or her mother, who is the only maker on the note) made 8 payments.
6.   Eight payments at $2,514.28 totals $20,114.24.
7.   The original principal of $324,000 minus 8 payments equals $303,885.76.
8.   At best, therefore, the total debt should be found to be no more than $303,885.76.

<u>CONCLUSION</u>

Deutsche Bank has failed to demonstrate by way of competent evidence that it is the holder of the note and mortgage.  Accordingly its claim must be disallowed and the security interest declared void, and the motion for relief from stay denied with prejudice.  To the extent that the court is at all inclined to allow the claim, it should be allowed only as a total debt of no more than $303,885.76, for all of the reasons given.  Because the motion for relief from stay is predicated on the now incorrect allegation that Hayes was required to make direct payments to Deutsche Bank or its servicer, the motion still must be denied, with prejudice.

It seems well settled that debtors are punished, in one way or another, if they "play fast and loose" with the courts.  In re Marrama, 445 F.3d 518 (1st Cir. 2006).  Courts are increasingly coming to the conclusion that similarly abusive behavior by creditors warrants punishment, as well.  Wells Fargo Bank, N.A. v. Jones, -- BR --, 2008 WL 2635369 (E.D.La. 2008); In re Nosek, 2005 WL 3159643 (Bkrtcy.D.Mass. 2005); In re Nosek, 2006 WL 1867096 (Bkrtcy.D.Mass. 2006), aff'd in part and reversed in part and remanded, 354 BR 331 (D.Mass. 2006), on remand 363 BR 643 (Bkrtcy.D.Mass. 2007).  The record of this case strongly suggests that Deutsche Bank, AMC Mortgage Services, and/or CitiResidential are "playing fast and loose" with the facts.  As a result, they should be punished appropriately.

---

[4] Although marked "For Publication", it has not appeared on Westlaw as of the date and time of this memorandum.

Hayes requests that the court enter findings of fact and conclusions of law consistent with the foregoing, and grant her judgment accordingly.

August 8, 2008

Respectfully submitted,
Robin Hayes
By debtor's attorney,


/s/          David G. Baker
David G. Baker, Esq.
236 Huntington Avenue, Ste. 302
Boston, MA  02115
617-340-3680
BBO# 634889


Certificate of Service

The undersigned states upon information and belief that the within paper was served upon the entities named below by the court's CM/ECF system.

/s/          David G. Baker
David G. Baker

1.    Carolyn Bankowski-13     13trustee@ch13boston.com
2.    James E. Brown on behalf of United States of America - IRS
      james.e.brown2@usdoj.gov
3.    Nina Ching on behalf of United States of America - IRS
      Nina.P.Ching@IRSCounsel.Treas.Gov, bankruptcy.boston@irscounsel.treas.gov
4.    Gillian Feiner on behalf of Attorney General     gillian.feiner@state.ma.us
5.    Adam B. Finkel on behalf of Deutsche Bank National Trust Company, as Trustee of
      Argent Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates Series 2004-
      W11, Under the Pooling and servicing Agreement Dated as of Octo
      bankruptcy@kordeassoc.com
6.    John Fitzgerald     USTPRegion01.BO.ECF@USDOJ.GOV
7.    Stephanie Kahn on behalf of Attorney General     stephanie.kahn@ago.state.ma.us,
      paper@mab.uscourts.gov
8.    Victor Manougian on behalf of AMC Mortgage Services, Inc. as Servicer for Argent
      Mortgage Company, LLC     bankruptcy@kordeassoc.com
9.    Stephen G. Murphy on behalf of Massachusetts Department of Revenue
      murphys@dor.state.ma.us
10.   Julie A. Ranieri on behalf of AMC Mortgage Services, Inc. as Servicer for Argent
      Mortgage Company, LLC     bankruptcy@kordeassoc.com
11.   Michael Van Dam on behalf of Capital Trust, LLC     mvandam@trainilaw.com,
      lhamlin@trainilaw.com