UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 13 |
| ROBIN HAYES, | Case No. 07-13967-JNF |
| Debtor. | |

**RESPONSE TO ORDER TO SHOW CAUSE**

Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee of Argent Securities, Inc. Asset-Backed Pass-Through Certificates Series 2004 W-11 ("ARSI Series 2004 W-11"), acting by and through its loan servicer Citi Residential Lending Inc. ("Citi"), hereby responds to the Court's August 19, 2008 Order that Deutsche Bank and its counsel show cause why they should not be sanctioned under Fed. R. Bankr. P. 9011 for filing and prosecuting the Motion for Relief from the Automatic Stay to foreclose the mortgage executed by the Debtor Robin Hayes originally in favor of Argent Mortgage Company, LLC ("Argent"). The short answer is that, despite any perceived deficiencies in proof at the July 14-15, 2008 evidentiary hearing in this matter, Deutsche Bank, as Trustee, owns the mortgage loan and had and has standing to seek relief from stay and Citi as loan servicer likewise had and has standing.

Claimant submits that sufficient evidence was introduced to establish that Citi is servicing the Debtor's mortgage loan for Deutsche Bank as Trustee and has standing to prosecute the claim, and that Deutsche Bank has standing to seek relief from stay, and disagrees with the Court's decision to the contrary. But even if the Court were correct for example that the recorded Assignment of Mortgage was not authorized by the Limited Power of Attorney given to Citi by Argent, nonetheless, reliance on it by Deutsche Bank, Citi, and their counsel cannot be a

basis to impose sanctions. The First Circuit has cautioned that "courts ought not invoke Rule 11 for slight cause; the wheels of justice would grind to a halt if lawyers everywhere were sanctioned every time they made unfounded objections, weak arguments, and dubious factual claims." *Young v. City of Providence*, 404 F.3d 33, 39-40 (1st Cir. 2005).[1] Rule 11 sanctions require "*serious* misconduct." *Id.* at 40 (emphasis in original). *No* misconduct exists here.

## BACKGROUND

As the Court is aware, the real estate mortgage loan at issue was securitized, through what the Court's August 19, 2008 Memorandum ("Mem.") referred to as "the convoluted process of securitization." Mem. at 15. It is true that securitizations are significantly more involved than the traditional borrower/lender relationship. An understanding of the securitization process is necessary to determination of the standing question presented.

Securitization involves the sale of the loan by the lender to a new owner – the issuer – who then sells securities to investors. Those investors are buying "bonds" that entitle them to a share of the cash paid by the borrowers on the mortgages in the pool. Another party – the trustee – holds legal title to the mortgage loans for the benefit of the pool investors. Yet another party – a servicer – collects the payments, distributes them and pursues delinquencies when necessary.

In the case of the Debtor's loan, Argent was the originator of the loan; it was sold through an affiliate to the Depositor Argent Securities, Inc. ("ARSI"), who placed it in the ARSI Series 2004 W-11 pool; Deutsche Bank as Trustee owns the loan in trust for the investors; and Citi in 2007 took over servicing of the loan from AMC Mortgage Services, Inc. ("AMS") who was subservicer to the original Master Servicer, Ameriquest Mortgage Company ("Ameriquest").

---

[1] "Because Rule 9011 is derived from Federal Rule of Civil Procedure 11, the First Circuit has explained that 'Rule 11 jurisprudence is largely transferable to Rule 9011 cases.'" *In re CK Liquidation Corp.*, 321 B.R. 355, 362 (B.A.P. 1st Cir. 2005) (citing *In re D.C. Sullivan Co.*, 843 F.2d 596, 598 (1st Cir. 1988)).

**STATEMENT OF FACTS**

The Debtor Robin Hayes owns as joint tenants with her mother Tina Hayes the real property located at 232 Perkins Avenue, Brockton, Massachusetts (the "Perkins Avenue property"). Mem. at 3. The Perkins Avenue property is encumbered by a mortgage dated November 3, 2004 (Hearing Ex. 2), which secures an adjustable rate promissory note of even date in the original principal amount of $324,000. (Hearing Ex. 1.) The mortgage was perfected by recording in the Plymouth County Registry of Deeds in Book 29405, at Page 82.

The Note and Mortgage indentify Argent Mortgage Company, LLC as the Lender. Argent sold the loan to its affiliate Ameriquest pursuant to a standing Mortgage Loan Purchase and Warranties Agreement, under which Ameriquest purchased, from time to time, for purposes of loan securitization, Argent's wholesale loan production, *i.e.*, mortgage loans originated by Argent. *See* Declaration of Diane E. Tiberend, dated Sept. 16, 2008 ("Tiberend Decl."), ¶¶ 2-3 and Ex. 1. Ameriquest, in turn, sold the loan to ARSI which deposited the loan into the ARSI Series 2004 W-11 trust subject to the Pooling and Servicing Agreement ("PSA") dated as of October 1, 2004 between ARSI as Depositor, Ameriquest as Master Servicer, and Deutsche Bank as Trustee. (Hearing Ex. 6.) The Debtor's loan is listed as Loan No. 0066546276 (the same number that appears on the Note) in the Subsequent Mortgage Loan Schedule to the PSA. *See* Affidavit of Ronaldo Reyes, dated Sept. 16, 2008 ("Reyes Aff."), ¶ 13 & Ex. D.

Under Section 2.01 of the PSA, the Depositor conveys to the Trustee, for the benefit of the investors, all of its rights in the mortgage loans. At the hearing in this matter, Debtor's counsel argued that this loan could not be in the ARSI Series 2004 W-11 pool, since it was originated approximately one month after the PSA was signed. But under Section 2.09 of the PSA, the Depositor may convey Subsequent Mortgage Loans into the pool. The Debtor's

3

mortgage loan is such a Subsequent Mortgage Loan, and it is listed in the ARSI Series 2004 W-11 Schedule of Subsequent Mortgage Loans. Reyes Aff. ¶ 13 & Ex. D.

Pursuant to Section 2.01 of the PSA, the Depositor shall "deliver, *or cause to be delivered* to the Trustee, with respect to each Subsequent Mortgage Loan," PSA § 2.01 (emphasis added),

> (i) the original Mortgage Note, endorsed in blank, without recourse, or in the following form: "Pay to the order of Deutsche Bank National Trust Company, as Trustee under the applicable agreement, without recourse," with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee, or with respect to any lost Mortgage Note, an original Lost Note Affidavit; provided however, that such substitutions of Lost Note Affidavits for original Mortgage Notes may occur only with respect to Mortgage Loans, the aggregate Cut-off Date Principal Balance of which is less than or equal to 2.00% of the Pool Balance as of the Cut-Off Date;
>
> (ii) the original Mortgage, with evidence of recording thereon, and a copy, certified by the appropriate recording office, of the recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon;
>
> (iii) an original Assignment assigned in blank, without recourse;
>
> (iv) the original recorded intervening Assignment or Assignments showing a complete chain of assignment from the originator to the Person assigning the Mortgage to the Trustee as contemplated by the immediately preceding clause (iii) or the original unrecorded intervening Assignments;
>
> (v) the original or copies of each assumption, modification, written assurance or substitution agreement, if any; and
>
> (vi) the original lender's title insurance policy or an attorney's opinion of title or similar guarantee of title acceptable to mortgage lenders generally in the jurisdiction where the Mortgaged Property is located, together with all endorsements or riders which were issued with or subsequent to the issuance of such policy, or in the event such original title policy is unavailable, a written commitment or uniform binder or preliminary report of title issued by the title insurance or escrow company.

4

Section 4(ii) of the Subsequent Mortgage Loan Purchase Agreement ("SMLPA") between Ameriquest, as Seller, and ARSI, as Purchaser, likewise calls for delivery of those same documents for each mortgage loan "to the Purchaser *or any assignee, transferee or designee of the Purchaser*." SMLPA, § 4(ii) (emphasis added), Reyes Aff. ¶ 13 & Ex. C.  Any documents not so delivered "are and shall be held in trust by the Seller for the benefit of the Purchaser or any assignee, transferee or designee of the Purchaser." *Id*., § 4(i).

Subsequent to the November 3, 2004 loan closing, on December 7, 2004 the Debtor's loan was conveyed by Subsequent Transfer Instrument to Deutsche Bank as Trustee of the ARSI Series 2004 W-11 pool.  Reyes Aff. ¶ 14 & Ex. E.  In accordance with the terms of the SMLPA and PSA, the original Payee, Argent Mortgage Company, LLC, indorsed the Note to Ameriquest Mortgage Company without recourse, and Ameriquest Mortgage Company in turn indorsed the Note in blank without recourse.  Reyes Aff. ¶ 11 & Ex. A.  The original Note was transmitted to Deutsche Bank, the pool Trustee, and Deutsche Bank has had ownership, possession and control of the original Note at all times since 2004.  Reyes Aff. ¶ 17 & Ex. A.

The Mortgage followed the same path.  On November 3, 2004 it was assigned by Argent Mortgage Company, LLC to Ameriquest Mortgage Company, and Ameriquest subsequently executed an assignment of the Mortgage in blank and delivered the Mortgage to Deutsche Bank, as Trustee.  *See* Reyes Aff. ¶ 11 & Ex. A.  No assignment of the mortgage was recorded at that time, consistent with the industry practice to not record mortgage assignments until recourse to the collateral is necessary upon a borrower's default.

The Debtor filed this Chapter 13 petition, her third, and the sixth involving the Perkins Avenue property, on June 26, 2007.  AMS filed a proof of claim on August 13, 2007 "as loan servicer for Secured Creditor Argent Mortgage Company, LLC."  (Hearing Ex. 8.)  Deutsche

5

Bank filed the Motion for Relief from Stay on September 17, 2007.  On April 29, 2008, a Transfer of Claim Other Than for Security, dated April 8, 2008, was filed, pursuant to which AMS transferred the proof of claim it had previously filed to Citi as servicer for Deutsche Bank as Trustee for the registered holders of Argent Securities, Inc.  (Hearing Ex. 18.) [2]

Because record title to the mortgage remained in Argent Mortgage Company, LLC, the loan originator, a "Confirmatory Corporation Assignment of Deed and Trust Mortgage" was executed and recorded.  (Hearing Ex. 3.)  The assignment, dated April 16, 2008, and made effective as of October 24, 2005, was executed for Argent by Citi, which held (and continues to hold) a Limited Power of Attorney (Hearing Ex. 4) to, *inter alia*, take all acts necessary for "the completion of judicial or non-judicial foreclosure."[3]  A copy of the Assignment of Mortgage was recorded in the Plymouth County Registry of Deeds in Book 35896, at Page 181.[4]

Since recording of the Assignment of Mortgage at the Plymouth County Registry of Deeds on April 28, 2008, record title to the mortgage on the Perkins Avenue property has stood in the name of Deutsche Bank, as Trustee of the ARSI Series 2004 W-11 Trust.  Record title to the mortgage remains in Deutsche Bank as Trustee at this time, without any challenge or objection by either Argent Mortgage Company, LLC or Ameriquest Mortgage Company.

---

[2] This was not precisely correct, as Deutsche Bank is Trustee for the holders of the Series 2004 W-11 securities issued by Argent Securities, Inc.  Argent Securities, Inc. has also been mistakenly referred to in pleadings, as the Court recognized in its decision, as "Argent Mortgage Securities, Inc."  Nothing turns on these errors.

[3] The Court's August 19, 2008 Memorandum acknowledged that the "Incumbency Certificate," dated October 23, 2007 (Hearing Ex. 5), attested to Tamara Price's authority to execute the Assignment.  In the absence of an instrument revoking that authority, she would be presumed to continue to possess such authority.  Under Mass. Gen. Laws c. 183, §54B, no such proof of Ms. Price's authority or continuing authority is legally required.

[4] After questions were raised at the hearing in July 2008 regarding the scope of the Limited Power of Attorney, Claimant's counsel obtained execution of a new form of Assignment of Mortgage to Deutsche Bank, directly from Argent Mortgage Company, LLC itself.  A copy of that Assignment of Mortgage was recorded in the Plymouth County Registry of Deeds on August 7, 2008 in Book 36254, at Page 348, and it was referenced in and attached as Exhibit C to Deutsche Bank's Motion to Dismiss, filed on August 7, 2008 (Docket No. 340).

LIBA/1929639.1

## ARGUMENT

**A. Deutsche Bank, as Trustee of the ARSI Series 2004 W-11 Pool, Is the Holder of the Note and Owner of the Debtor's Mortgage Loan.**

The focus by the parties and Court on the mortgage assignments has obscured that "[t]he mortgage is merely security for the note." *Weinberg v. Brother*, 263 Mass. 61, 62 (1928). The Note is a negotiable instrument and may be transferred in accordance with Article 3 of the Uniform Commercial Code ("UCC"), as enacted in Massachusetts as M.G.L. c. 106.

The "blank indorsement" of the Note converted the Note to a bearer instrument negotiable by transfer of possession alone. M.G.L. c. 106, §§ 3-205(b), 3-109(a)(2). The Note was negotiated in 2004 when it was delivered to Deutsche Bank as Trustee, and Deutsche Bank acquired all the rights of a holder in due course. M.G.L. c. 106, §§ 3-201(a), 3-203(a)-(b). In this regard, the UCC worked no change in prior Massachusetts law. *See*, *e.g.*, *First Nat. Bank of Cape Cod v. North Adams Hoosac Sav. Bank*, 7 Mass. App. Ct. 790, 796 (1979) ("The Uniform Commercial Code continues to recognize the negotiability of a note which is secured by a real estate mortgage."). *See* M.G.L. c. 106, §§ 3-104(1), 3-104(2)(d), 3-105(1)(c).

Deutsche Bank is thus the holder of the Note and owner of the loan, as Trustee of the ARSI Series 2004 W-11 Pool. Possession of the Note was delivered to Deutsche Bank as Trustee in 2004, and Deutsche Bank continues to hold the original Note in its collateral file for the Debtor's mortgage loan. *See* Reyes Aff. ¶ 17. "As the holder of the note, [Deutsche Bank as Trustee] also would be entitled to all payments to be made by the mortgagors on the note." *First Nat. Bank of Cape Cod*, 7 Mass. App. Ct. at 797 (citing M.G.L. c. 106, §3-301).

**B. Deutsche Bank as Trustee of the ARSI Series 2004 W-11 Pool Is the Holder of the Mortgage, but even If It Is Not, It Is Entitled to the Benefits of the Mortgage.**

The Claimant believes that Deutsche Bank as Trustee is the holder of the Debtor's Mortgage. Certainly, it is the record holder of the Mortgage by virtue of the recording of the

Assignment of Mortgage in the Plymouth County Registry of Deeds. The Claimant believes that Deutsche Bank as Trustee is the actual holder of the Mortgage, whether as a result of the assignment in blank of the mortgage by Ameriquest Mortgage Company and delivery to Deutsche Bank in 2004 and/or the recorded Confirmatory Corporation Assignment of Mortgage executed by Citi pursuant to the Limited Power of Attorney and thereafter by Argent itself.[5]

There is no requirement that the "chain of title" of the mortgage pass through each of the intermediaries who purchased or sold the commercial paper. As has already been shown, the SMLPA and PSA contractually obligated Ameriquest and ARSI, respectively, to "cause to be" delivered and assigned to the pool Trustee the Note and Mortgage. There is no reason why an assignment of the Mortgage directly from Argent Mortgage Company, LLC (or Ameriquest) to Deutsche Bank as Trustee would not constitute a permissible "chain of title" for the Mortgage, and vest in Deutsche Bank as Trustee good legal title. Specifically, there is no legal requirement of an assignment of the Mortgage to Argent Securities, Inc., the Depositor under the PSA.

But if there is a flaw in how the Mortgage was assigned, whether by reason of the assignment in blank or the power of attorney, it does not follow that Deutsche Bank as Trustee, or Citi as its loan servicer, are without standing to file and prosecute the claim. Under long-settled Massachusetts law, Deutsche Bank as Trustee would have equitable ownership of the

---

[5] If the Limited Power of Attorney did not authorize Citi to execute the Assignment of Mortgage, which the Claimant disputes, Argent should be deemed to have ratified the assignment by raising no objection to the Transfer of Claim served by the Bankruptcy Court on AMS as servicer for Argent, and certainly by the Assignment of Mortgage subsequently executed by Argent itself after the assignment signed for Argent by Citi was called into question. A power of attorney creates a traditional principal-agent relationship. *Gagnon* v. *Coombs*, 39 Mass. App. Ct. 144, 154 (1995). Where an agent lacks actual authority, the principal will still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after learning of it. *See, e.g.*, *The Colony of Wellfleet, Inc. v. Harris*, 71 Mass. App. Ct. 522 (2008). "Ratification relates back, and has the same effect, as a prior grant of authority by the principal to the agent." *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 18 (1997).

8

LIBA/1929639.1

incidents of the Mortgage, even if legal title remained in another.  That interest, coupled with ownership of the Note and the right to receive loan payments, is sufficient to confer standing.

This is not a novel or controversial proposition.  *See First Nat. Bank of Cape Cod*, 7 Mass. App. Ct. at 796 ("It has long been held in this Commonwealth that the transfer of a note which is secured by a mortgage is a valid transaction with legal title to the mortgage document remaining with the mortgagee in trust for the purchaser of the note who can thereafter enforce in equity an assignment of the mortgage."); *see also Wolcott v. Winchester*, 81 Mass. 461 (1860) (where bond secured by mortgage was transferred without mortgage, party holding legal title to mortgage holds it in trust for the party owning the debt).  Neither is this rule unique to Massachusetts.  *See Carpenter v. Longan*, 83 U.S. 271, 275 (1872) ("[T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

This rule holds true whether no actual assignment of the mortgage occurs or is attempted, or there is a defect in an attempted mortgage assignment.  In *Commonwealth v. Reading Sav. Bank*, 137 Mass. 431 (1884), there was an assignment of mortgage that was defectively executed.  The Supreme Judicial Court stated that the error was "of little importance," since the note and debt were transferred by indorsement of the note, and that a court of equity should "treat the mortgage given to secure the debt as transferred with it."  *Id*. at 443.

There is no requirement in Massachusetts law, as the Court's decision acknowledges, that an assignment of mortgage be recorded, and it is further well-settled that an assignment of mortgage may be recorded at any time before, or even after, foreclosure.  Mem. at 13 (citing 28B Mass. Prac. Series REBA Tit. Std. No. 58).  *See Lamson & Co., Inc. v. Abrams*, 305 Mass. 238

9

(1940); *Montague v. Dawes*, 94 Mass. 397 (1866) (cited in the annotations to 28B Mass. Prac. Series REBA Tit. Std. No. 58).

Thus, as discussed in the next section below, standing in this case does not turn upon whether there is a recorded assignment of the Mortgage (although there is an assignment of the mortgage on record at the Plymouth Registry), nor does it eliminate Deutsche Bank's standing if there is a legal infirmity in the attempted assignment of the Mortgage. Deutsche Bank as Trustee is the holder of the Note and the owner of the mortgage loan, and is either also the actual and record holder of the Mortgage or, if it is not the legal holder of the Mortgage, nevertheless holds equitable ownership of the Mortgage and is entitled to claim its economic benefits.

C. **Deutsche Bank as Trustee Has Standing to Seek Relief from Stay.**

Under Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, a motion for relief from the automatic stay must be brought by a "party in interest." The test in the First Circuit for a party in interest is "a colorable claim to the property." *In re Maisel*, 378 B.R. 19, 21 (Bankr. D. Mass. 2007) (citing *In re Huggins*, 357 B.R. 180, 185 (Bankr. D. Mass. 2006), and *Grella v. Salem Five Cent. Sav. Bank*, 42 F.3d 26 (1st Cir. 1994)).

A claim is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(A)-(B). Applicable state law determines whether a claimant has a colorable claim. *In re Woodberry*, 383 B.R. 373 (Bankr. D.S.C. 2008), a decision cited by the Court (Mem. at 12), is instructive. Like this case, *Woodberry* involved a securitized mortgage loan and a claim filed by the loan servicer and custodian of the note for the Trust, who in *Woodberry* happened to be one and the same.

The *Woodberry* court stated that "when a negotiable note payable to order is indorsed generally by the payee[,] the note and its incidents pass in the commercial world by delivery." 383 B.R. at 377. The "Allonge to Note" converted the note in *Woodberry* to a bearer instrument,

10

just as did the indorsement in blank by Ameriquest Mortgage Company of the Note at issue in this case. Possession of the note and mortgage in *Woodberry* by ASC, as servicer and custodian for the Trustee of the loan securitization trust, was held sufficient to render ASC a "creditor," "party in interest," and "real party in interest," with standing to seek relief from stay to foreclose the mortgage, without the requirement of a recorded or written assignment of the mortgage.

The Bankruptcy Code and Fed. R. Civ. P. 17 have "liberal" standing provisions, requiring only a "direct stake" in the litigation. *Greer v. O'Dell*, 305 F.3d 1297 (11th Cir. 2002) (recognizing standing of loan servicer). Thus, in *Saffran v. Novastar Mortgage, Inc.*, 2007 U.S. Dist. LEXIS 96306 (D. Mass. Oct. 18, 2007), the District Court (Saris, J.) held that although the mortgage was held by MERS as Nominee for Novastar, Novastar nonetheless had standing to seek relief from stay, to invoke the statutory power of sale under Mass. Gen. Laws c. 244, § 14, and to appear in court, citing *Nichols v. Cadle Co.*, 139 F.3d 59 (1st Cir. 1998). Regardless of whether the assignment of the mortgage to Novastar had occurred, or was entitled to be afforded its intended retroactive effect, Novastar had sufficient financial interest to seek relief from stay.[6]

*In re Maisel* distinguished *Saffran v. Novastar* on the ground that Novastar "was at all times the holder of the note and had a financial interest in that capacity," 378 B.R. at 21-22, whereas in *Maisel* "the Movant was an unrelated third party that had no interest in the mortgage or note until *after* the Motion for Relief was filed." *Id.* at 22 (emphasis in original). Likewise, in the case at bar, Deutsche Bank, as Trustee, was the holder of the Note at all times after 2004, certainly it was no stranger to the Note which was in its possession, and therefore it had standing

---

[6] Likewise, MERS, as Nominee, would have been entitled to seek stay relief in its own name. *In re Huggins*, 357 B.R. 180.

11

to file and pursue the Motion for Relief from Stay.[7]

### D.  Citi, as Servicer, Has Standing to Prosecute the Claim on Behalf of the Holder.

As the Court noted in its decision, "[c]ourts have held that mortgage servicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service." Mem. at 12 (citing *Woodberry*, 383 B.R. at 379, and *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.")).

Citi employee Andrea Rodriquez-Tapia testified that Citi is the current servicer of the mortgage loan on the Perkins Avenue property. *See* Mem. at 10. That testimony was not rebutted by any evidence, let alone "substantial evidence," introduced by the Debtor. Ms. Rodriquez-Tapia also identified Deutsche Bank, as Trustee, as the party for whom Citi services the Debtor's mortgage loan. Transcript of the Hearing held July 14, 2008 at 30.

In *In re Conde-Dedonato*, the Court accepted an affidavit from the loan servicer, Homecomings, attesting that (as here) Deutsche Bank was the holder, and that Homecomings acted as servicer with authority to collect payments and standing to file a claim. The debtor did not dispute that Homecomings was the servicer. The Debtor in this case has no basis to dispute that Citi is servicing her mortgage loan, based on her receipt of the statutory notice required by RESPA.[8] Thus, Citi, which derives its servicing authority from the PSA, has standing to seek

---

[7] *In re Schwartz,* 366 B.R. 265 (Bankr. D. Mass. 2007) is similarly distinguishable. In *Schwartz*, the assignment of mortgage was not signed until after the foreclosure sale. Deutsche Bank here cannot fairly be characterized as a party who merely "expects," 366 B.R. at 269, to receive the Debtor's Mortgage by assignment.

[8] It is a statutory requirement under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq.*, that a borrower receive timely notice of a transfer of servicing, so that the borrower will know where to send loan payments to receive proper credit. There is no corresponding legal requirement that a borrower be notified of sale of the note or assignment of the mortgage, and the terms of the note and mortgage state plainly that they may be sold or transferred one or more times without any advance notice to borrower. *See* Exs. 1 and 2.

relief, in its own name as servicer or in the name of the mortgage loan creditor.

*Conde-Dedonato* also held that under New York law not only is there no requirement of recording of a mortgage assignment, there is no requirement of a written assignment at all. "Thus, a mortgage and note can be transferred by delivery, and do not have to be evidenced by a written assignment." *In re Conde-Dedonato*, 391 B.R. at 251, and cases cited; *see also Fryer v. Rockefeller*, 63 N.Y. 268, 276 (1875) ("A good assignment of a mortgage is made by delivery only.").

The SMLPA and the PSA are both governed by New York law. *See* SMLPA § 18; Reyes Aff. ¶ 13 & Ex. C; PSA § 11.04. Thus, the assignment in blank of the Mortgage by Ameriquest and delivery to Deutsche Bank as Trustee of the ARSI Series 2004 W-11 trust appear to constitute a valid legal assignment of the Mortgage, and the standing of Deutsche Bank should not depend on either the Confirmatory Corporation Assignment of Mortgage recorded to update the record title or on the Limited Power of Attorney previously construed by the Court.[9]

The *Conde-Dedonato* court noted that in *In re Viencek*, 273 B.R. 354 (Bankr. N.D.N.Y. 2002), the court rejected a debtor's attempt to expunge a proof of claim because the servicer failed to identify the actual owner of the claim. The Court held that to allow the debtor to expunge the claim would be "to elevate form over substance." 273 B.R. at 358. As here, the debtor acknowledged the debt and the existence of the mortgage. The Court observed that "it is possible for more than one party to be a real party in interest as to the creditor claim," given "an understanding of modern day financing by which creditors frequently carve up the bundle of rights associated with the claim." *Id.* at 357-58 (internal quotations omitted). The court noted that "bankruptcy courts have the power to insure that . . . 'technical considerations will not

---

[9] Section 11.09 of the PSA further provides that if for any reason the transfer is not effective as a sale of the mortgage loans, Deutsche Bank as Trustee is granted a security interest in the loans.

13

prevent substantial justice from being done,' with respect to the allowance of claims." *Id.* at 358 (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)).

In a similar vein, earlier this year the Ninth Circuit held that a stay relief order granted to a loan servicer, Washington Mutual, authorized the mortgage holder, Wachovia Bank, to foreclose even though the stay relief motion did not name Wachovia Bank. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir. 2008). The Court of Appeals observed that "the Supreme Court recently noted that 'bankruptcy court jurisdiction, at its core, is *in rem*.' " *Id.* at 861 (quoting *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006)). The stay relief order was binding as to the debtor's property, and it was "immaterial" that the stay relief order did not name the actual holder of the debtors' mortgage. *Id.*[10] In the case before the Court, there is no dispute that the Debtor gave a mortgage on the Perkins Avenue property to secure the Note, that the Note went into default, that payment is owed on the Note, and that the Mortgage includes the statutory power of sale to realize on the collateral. The Debtor has no basis to dispute that Citi is the servicer of her mortgage loan. There is no suggestion that any payments made on the Debtor's mortgage loan, whether to Citi or to AMS as the prior loan servicer, have not been properly credited against the loan debt. The Debtor's Objection to the claim is a transparent stalling tactic, and is needlessly increasing the cost and burden of this litigation to all.

The Court's August 19, 2008 Memorandum reflects an overly restrictive view of standing under the Bankruptcy Code to file and prosecute a claim and seek relief from stay, and should be reconsidered by the Court under 11 U.S.C. § 502(j) and Fed. R. Bankr. P. 3008.

**E.    There is No Basis for Imposition of Sanctions on Any Party Under Rule 9011.**

Sanctions under Rule 9011 should not lightly be imposed and any doubt should be

---

[10] The Ninth Circuit noted that the debtors had not challenged Washington Mutual's standing, and, if they had, the bankruptcy court could have made factual findings concerning its relationship with Wachovia Bank.

resolved in favor of the party against whom the sanctions are to be assessed. *See* 2 MOORE'S FEDERAL PRACTICE § 11.11 (3d ed. 2008). When a *party* seeks Rule 9011 sanctions, the Rule gives the other party a 21-day "safe harbor" to cure the violation by withdrawing or correcting the challenged contention without penalty. No Rule 9011 question was raised by the Debtor here. Here the Court exercised its power under the Rule to act on its own initiative by issuing a show cause order. The Advisory Committee Notes to Rule 11 explain why there is no corresponding "safe harbor" when the Court issues a show cause order *sua sponte:*

> Since show cause orders will ordinarily be issued only in situations that are akin to contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative.

Fed. R. Civ. P. 11 Advisory Committee's Notes to 1993 Amendments. *See MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003) (because there is no "safe harbor" with *sua sponte* sanctions, the Rule 11 standard "is applied with particular strictness").[11]

Under Rule 9011, presenting a document to the court certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (3) the allegations and other factual contentions have evidentiary support. "The certification is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding the fact." Fed. R. Civ. P. 11 Advisory Committee's Notes. Indeed, to invoke Rule 11 sanctions merely because a party's proof is not deemed persuasive by the court at trial threatens the operation of the adversary system by burdening counsel's ethical obligation to zealously advocate the client's position.

A judge of this court has cautioned that "the imposition of sanctions under Rule 9011 is a

---

[11] The Second Circuit applies a "subjective bad faith" standard for sua sponte sanctions where the safe harbor of Rule 11(c)(1)(A) was not available to counsel. *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003).

15

very serious matter . . . . Only those actions deemed to fall squarely within the purview of Rule 9011 will result in a finding that it has been violated and the concomitant imposition of sanctions by this Court." *In re M.A.S. Realty Corp.*, 326 B.R. 31, 37 (Bankr. D. Mass. 2005).

The standard of inquiry is "objective reasonableness" in all the circumstances. It was objectively reasonable for Deutsche Bank, as Trustee, to seek relief from stay to foreclose the Debtor's Mortgage where Deutsche Bank held the Note and owned the mortgage loan as Trustee for the pool investors of ARSI Series 2004 W-11. It was objectively reasonable for Citi as loan servicer to prosecute the claim to collect amounts due on the Note when it was contractually obligated to do so as part of its loan servicing responsibilities. It was objectively reasonable for counsel for Deutsche Bank as Trustee and Citi as loan servicer to prosecute the claim and the motion for relief from stay when counsel had no cause to question that Deutsche Bank as Trustee of the ARSI Series 2004 W-11 pool was the holder of the Note and owner of the Claim, or that Citi was servicing the mortgage loan for Deutsche Bank as Trustee.[12]

Whether or not the Court reached a correct conclusion regarding standing to seek stay relief on the basis solely of the evidence adduced at the hearing on July 14-15, 2008, the objective reality is that when all the available evidence is considered, the standing of Deutsche Bank, as Trustee of the ARSI Series 2004 W-11 Pool, and Citi as its loan servicer, is apparent. The proof that the court identified as missing has been supplied. The original Note is in Deutsche Bank's collateral file, and has been since 2004, and the Debtor's loan is in fact listed in

---

[12] In addition, counsel for Deutsche Bank as Trustee and for Citi as loan servicer should be entitled to rely on the recorded Assignment of Mortgage and the state of record title without second-guessing the client's construction of the Limited Power of Attorney, or taking the most conservative view of its permissible scope.

16

LIBA/1929639.1

the Subsequent Mortgage Loan Schedule identifying loans in the pool subject to the PSA. *See* Reyes Aff., Ex. D. These facts, and the others introduced in evidence at the hearing, or proffered in support of this Response, establish beyond question that Deutsche Bank as Trustee has standing to seek relief from the automatic stay for the purpose of foreclosure of the mortgage on the Debtor's Perkins Avenue property, and, accordingly, that there can be no basis to sanction Deutsche Bank or its counsel for filing and prosecuting the Motion for Relief from Stay.

## CONCLUSION

For all of the foregoing reasons, the Court should not seek to impose any sanctions under Rule 9011 against either Deutsche Bank as Trustee or its counsel Korde & Associates.

> Respectfully submitted,
>
> DEUTSCHE NATIONAL BANK TRUST COMPANY, as Trustee for Argent Securities, Inc. Asset-Backed Pass-Through Certificates Series 2004 W-11, Acting by and through its Loan Servicer Citi Residential Lending Inc.
>
> By its attorneys,
>
> /s/ Richard A. Oetheimer
> Richard A. Oetheimer (BBO No. 377665)
> Matthew J. Thaler (BBO No. 663006)
> GOODWIN PROCTER LLP
> Exchange Place
> Boston, MA 02109
> (617) 570-1000
> (617) 523-1231 (fax)
> roetheimer@goodwinprocter.com

Dated:    September 18, 2008

17

LIBA/1929639.1

**CERTIFICATE OF SERVICE**

      I, Richard A. Oetheimer, hereby certify that on September 18, 2008, a copy of the foregoing Response to Order to Show Cause, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on parties listed on the NEF as not receiving electronic notice.

                                                /s/ Richard A. Oetheimer
                                                Richard A. Oetheimer